## ROWLY et al. *v.* KEMP, Tutrix.

Where a purchaser at a judicial sale fails to comply with its terms, his acts may be treated as nullities.

Where a sheriff has made a seizure under a *fi. fa.*, he is not bound to return the writ, unless required to do so by the plaintiff. He may sell under the seizure even after the return-day, where the failure to sell before is not attributable to the plaintiff.

Where a judgment was rendered for a certain amount, subject to a credit, and the credit, instead of being written in the body of the *fi. fa.*, was endorsed on it, in a certificate of the clerk under the seal of the court, the error, if it be one, is no ground for enjoining the execution for its whole amount.

The fact of an execution being issued for more than the amount due under the judgment, will not authorize an injunction for the whole amount.

One holding a prior mortgage cannot prevent the sale of the mortgaged property at the suit of a subsequent mortgagee. He must exercise his rights on the proceeds.

APPEAL from the District Court of Concordia, *Curry*, J. *Frost* and *H. A. Bullard*, for the appellants. *Thomas* and *Snyder*, for the defendant. The judgment of the court was pronounced by

Eustis, C. J.　The plaintiffs enjoined the proceedings under a writ of *fieri facias*, issued on a judgment obtained by the defendant, *Elizabeth Kemp*, tutrix, against the plaintiff, *Rowly*, which we have recently had before us, anto p. 316, The injunction was dissolved, with twenty per cent damages on the amount of the execution enjoined, and five hundred dollars special damages and costs. The plaintiffs have appealed.

I.　The principal ground on which the injunction was obtained, related to the irregularity of the proceedings of the sheriff in the execution of the writ subsequent to the first exposure for sale of the property seized.　The defendant, *Charles N. Rowly*, as attorney in fact of *Lansing*, bid for it, and it was adjudicated to him, and he not complying with the terms of the sale, the sheriff readvertised the property for sale, treating the acts of *Rowly*, attorney in fact, as nullities, as he was bound to do, for his conduct throughout shows that his sole object was to embarrass the proceedings of the sheriff, and defeat the process of the court,　It is well settled that, having made a seizure, the sheriff was not bound to return the writ, unless required by the plaintiff, but might proceed to sell under the seizure, notwithstanding the expiration of the return day of the writ, the failure to sell not having been attributable to the plaintiff. *Dugat* v. *Babin*, 3 Martin, N. S. 393.　*Labiche* v. *Lewis*, 12 Robinson, 8.　The objection to the regularity of the proceedings under the writ, as well as the reasons given for *Rowly's* refusal to comply with his bid, we consider untenable.

II.　In the judgment of *Elizabeth Kemp*, tutrix, on which the execution issued, there was a credit of $1,000 allowed, to take effect from the 11th March, 1841.　This credit, instead of being written in the body of the writ, was endorsed on it, in the terms of the judgment, under the certificate of the clerk and the seal of the court.　This error, if it be one, which we do not admit, could not furnish no ground for enjoining the execution, for its whole amount, upwards of $60,000.

III.　It is urged, on behalf of *Rowly*, that the whole of the judgment was not due, and that such has been the decision of this court on the appeal in that case.　This is true.　We reduced that judgment $1,300, on account of credits which we thought ought have to been allowed to *Rowly*.　But *Rowly* did not stay the execution on appeal which he took from that judgment by giving bond and surety, and thereby authorized the issuing of the execution.　He did not present this as one of the reasons for which he asked for the injunction; he did not allege that the debt was not due to the plaintiff in execution.　But, in any event, the extent for which *Rowly* could claim relief, would be for the amount by which the judgment was reduced, and affords no reasonable excuse for enjoining the proceedings for the recovery of the balance of it.

IV.　But there are other parties besides *Rowly*, who are plaintiffs.　His *alter ego, Jacob D. Lansing*, and *Samuel Rowly*, of the State of New York, *Hamilton M. Wright* and *James Wright*, of the city of New Orleans, unite with *Rowly* in defeating the recovery of the plaintiffs' debt.　Both *Samuel Rowly* and *Lansing* are, or appear to be, purchasers of the Marengo plantation and slaves, at sheriff's sale, at different periods, and the only relations they ought to have in this controversy are as stakeholders of the price.

V.　*Hamilton M. Wright* and *James Wright* assign, as their grounds of application, that they purchased the judgment of the *Mechanics' and Traders' Bank*, and have become subrogated to all its rights, and that under their execution the

46

Rowly
v.
Kemp.

Marengo plantation was sold, and bought by *Samuel Rowly*, who is now alleged to be the owner, but that the sale did not satisfy the debt.

It appears that these parties instructed the sheriff, through their attorney, *Mr. Frost*, who is also the sole attorney of *Rowly*, and the surety in the injunction bond, if *Samuel Rowly* should become the purchaser of the property at sheriff's sale, to dispense with his giving any security on the twelve months' bond for the purchase money, which was accordingly done. There is evidence before us which authorizes the belief that this judgment was assigned to the *Messrs. Wright*, for the purposes of *Rowly*, and that the consideration of the transfer from the bank came from him.

It is urged that, pending the appeal from the original judgment, the defendant in this suit and plaintiff in the other, had no right to enforce the mortgage by executing the judgment, and that the court has recognized the rank of the mortgage of the *Mechanics' and Traders' Bank*, adversely to the rank of the minors' mortgage, on which the bank had taken a suspensive appeal. The appeal was suspensive only as to the rank of the mortgages. The order granting the appeal expressly provided that the execution of the judgment against *Rowly* and *Lansing* should not be suspended. The bank was interested in the distribution of the proceeds of the property mortgaged; but no case is before us in which it was authorized to enjoin the sale of the property mortgaged to the minors, which extended only to one-third of the plantation and slaves, while that in favor of the bank extended to the whole, and amounted only to the sum of $9,383 22, with interest. 6 Mart. N. S. 615. 7 Ib. N. S. 281.

The judgment appealed from was against the plaintiffs *in solido*, and the surety, for $12,000, being twenty per cent on the amount of the principal and interest of the judgment of *Elizabeth Kemp*, tutrix, and of the execution enjoined, and five hundred dollars special damages, incurred for expense of counsel fees.

The amount of the injunction bond is only $5,000. A party applying to a court to suspend its process, which had become embarrassed with difficulties which he himself has been instrumental in creating for his own special benefit, ought to present a clear legal case, to protect himself from the payment of damages to the injured party. The law authorizes the court to impose them on the dissolution of injunctions wrongfully sued out. The maximum rate which the court has power to assess is high—very high; but the abuse is great which the law intends to remedy. It endangers the security of property, as well as the proper administration of justice, and it is our duty to repress all attempts to defeat the execution of judgments upon frivolous or fraudulent pretexts. We consider that there was no pretence on the part of *Rowly* to arrest this execution, and those who have lent their names for the furtherance of his purposes, as we think the other plaintiffs have, cannot complain if they are treated as his instruments, and amerced accordingly. The original judgment bears ten per cent interest, and we trust the delays will not be long ere the minors shall be restored to their rights. The injunction was granted in Jan. 1846, and we think twenty per cent damages too high, under the circumstances.

It is therefore ordered that the judgment appealed from be reversed, and that the defendant recover from the plaintiffs *in solido*, and *John W. Frost*, their surety, the sum of five thousand dollars, with costs; the defendant paying the costs of this appeal.